

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

**ENTERED
08/24/2015**

| | | |
|---|---|---|
| IN RE: | § | |
| STAR AMBULANCE SERVICE, LLC | § | CASE NO: 15-70041-M-11 |
|     Debtor | § | |
| | § | CHAPTER  11 |
| IN RE: | § | CASE NO. 15-70042-M-11 |
| RODOLFO E. MARTINEZ JR. & | § | |
| SILVIA MARTINEZ | § | |
| DEBTORS | § | CHAPTER 11 |

## *MEMORANDUM OPINION*

### *DENYING CONFIRMATION OF DEBTORS'JOINTLY ADMINISTRERED AMENDED PLAN OF REORGANIZATION*
*[Resolving Doc. # 73]*

## I. INTRODUCTION

The Court held a hearing on August 17, 2015 on the Jointly Administered Amended Plan of Reorganization filed by Star Ambulance Service, LLC & Rodolfo E. Martinez, Jr. & Silvia Martinez, Debtors, having previously entered an order approving the Amended Disclosure Statement, [ECF No. 50], for a Small Business Case pursuant to 11 U.S.C. §§ 101(51C) and (51D).  [ECF Nos. 40, 44, 46, 50, 51, 61, 63, 71 and 73].  For the reasons stated below, this Court finds that the confirmation of the Debtors' Jointly Administered Amended Plan of Reorganization should be **DENIED**.

### A.	*Findings & Conclusions*

The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute this Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as

such.

### B.     *Jurisdiction, Venue, and Constitutional Authority*

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(b).  This particular hearing arises under 28 U.S.C. § 157(b)(2)(L).  *See In Re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").  This Court also has an independent duty to evaluate whether it has the constitutional authority to sign a final order regarding the confirmation hearing.  *Stern v. Marshall*, 131 S. Ct. 2594 (2011).  The Supreme Court held that a statute authorizing bankruptcy judges to issue final judgments violated Article III to the extent that it authorized such final judgments on certain matters.  *Stern*, 131 S. Ct. at 2616.  The Court found that the particular bankruptcy ruling in dispute did not stem from bankruptcy itself, nor would it necessarily be resolved in the claims allowance process, and it only rested in a state law counterclaim by the estate.  *Id.* at 2618.  The Court reasoned that bankruptcy judges are not protected by the lifetime tenure attribute of Article III judges, but they were performing Article III judgments by judging on "all matters of fact and law" with finality.  *Id.* at 2618-19.  Hence, the Court held that Article III imposes some restrictions against a bankruptcy judge's power to rule with finality. The Court found that a solely state law based counterclaim, while statutorily within the bankruptcy judge's purview, escaped a bankruptcy court's constitutional power.  *Id.* at 2620.  This Court reads *Stern* to authorize final judgments only where the issue is rooted in a right created by federal bankruptcy or the resolution of which relies on the claims allowance process. In other words, this Court may issue final judgments and orders where the issue "arises in" or "arises under" bankruptcy, but not where the issue is merely "related to" bankruptcy.  *See*

28 U.S.C. § 157.  However, even where the case does create a "Stern problem," Article III will be satisfied where the parties to the case knowingly and voluntarily consent to the bankruptcy court's power to issue final judgments.  *Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015).

The matter at bar arises from the confirmation of Debtors' Combined & Jointly Administered Plan of Reorganization, which is a matter that can only arise in bankruptcy.  *See In re Prescription Home Health Care*, 316 F.3d 542, 547 (5th Cir. 2002) ("Under 28 U.S.C. § 157 (b)(2)(L)[1], jurisdiction is granted bankruptcy courts to confirm Chapter 11 reorganization plans…").  Thus, this Court finds that it has the constitutional authority to grant or deny confirmation of the Jointly Administered Plan of Reorganization.

## II.  PROCEDURAL HISTORY AND FINDINGS OF FACT

### A.    *Star Ambulance Service, LLC's Bankruptcy Filing*

1.      Pursuant to Debtors' Amended Plan of Reorganization, the bankruptcy was precipitated by an I.R.S. levy and seizure of assets.  The I.R.S. debt stemmed from a now defunct business operated by Rodolfo E. Martinez, Jr. and Rodolfo Martinez, III (father & son respectfully) called Star EMS which itself previously filed two chapter 11 bankruptcy cases, to wit: (1) Case No. 12-70427 filed on July 26, 2012 and dismissed for failure to abide by an agreed cash collateral order between the Debtor and the I.R.S.; and (2) Case No. 13-70072 filed on February 8, 2013 and dismissed on July 1, 2013.  Star Ambulance Service, LLC began operating in 2013 and immediately fell behind with its I.R.S. obligations due to its poor cash position.  In 2014 the I.R.S. began issuing levies on the Star Ambulance and Martinez bank accounts.

2.      On January 22, 2015 Star Ambulance Service, LLC, a Texas Limited Liability

---

[1] 28 U.S.C. § 157(b)(2)(L) states that "[c]ore proceedings include, but are not limited to confirmation of plans."

Company, ("*Star Ambulance*") filed its voluntary petition under Title 11, Chapter 11 under the United States Bankruptcy Code and checked the designation of Small Business Case pursuant to the provisions of 11 U.S.C. § 1121(e) commencing Case No.15-70041-M-11.  [ECF No. 1]. Silvia Martinez and Rodolfo Martinez III are the sole members of Star Ambulance. *Id.*

3.      On January 22, 2015, Star Ambulance filed its First Amended Petition.  [ECF No. 2]

4.      On February 23, 2015, Star Ambulance filed its Second Amended Petition.  [ECF No. 25]

**B.      *Rodolfo E. Martinez, Jr. and Silvia Estella Martinez's Bankruptcy Filings***

1.      On January 22, 2015, Rodolfo E. Martinez, Jr. & Silvia Estella Martinez (husband and wife respectively, collectively "***Martinez***") filed their voluntary petition under Title 11, Chapter 13 of the United States Bankruptcy Code commencing Case No. 15-70042-M-13.  [ECF No. 1]

2.      On January 22, 2015, Martinez filed their Chapter 13 Plan.  [ECF No. 2]

3.      On January 29, 2015 Martinez filed their First Amended Chapter 13 Plan.  [ECF No. 14]

4.      On February 27, 2015, Martinez filed a Motion to Convert their case from Chapter 13 to 11.  [ECF No. 19]

5.      On March 23, 2015 this Court entered an order converting the Martinez case to a proceeding under Title 11, Chapter 11 of the United States Bankruptcy Code.  [ECF No. 23]

6.      On March 24, 2015, Martinez filed their First Amended Petition, wherein they elected to NOT check the designation of Small Business Case pursuant to the provisions of 11

U.S.C. § 1121(e) .  [ECF No. 24]

    7.    On March 24, 2015 Martinez also filed their First Amended Schedules.  [ECF No. 25]

    8.    On March 26, 2015, Martinez filed their Second Amended Petition, this time electing to check the designation of  Small Business Case pursuant to the provisions of 11 U.S.C. § 1121(e).  [ECF No. 33]


**C.    *Star Ambulance Service, LLC & Rodolfo E. Martinez Jr. and Silvia Estella Martinez's Jointly Administered Combined Disclosure & Plan of Reorganization***

    1.    On May 13, 2015, Star Ambulance & Martinez *("Debtors")* filed a Motion for Expedited Consideration to have the respective Chapter 11 cases Jointly Administered.  [15-70041; ECF No. 35]

    2.    On May 18, 2015, this Court entered an order granting the Debtors' Motion for Expedited Consideration to Jointly Administer the respective Chapter 11 cases.  [ECF No. 38]

    3.    On May 27, 2015, Debtors filed their Jointly Administered Combined Disclosure Statement and Plan of Reorganization ("Plan").  [ECF No. 40]

    4.    Debtors subsequently amended their Plan on June 9, 2015.  [ECF No. 44]

    5.    This Court entered an order approving the Jointly Administered Disclosure Statement on June 17, 2015 and set a hearing on the confirmation of the Plan for July 22, 2015. The hearing was continued to August 17, 2015.  [ECF No. 50]

    6.    Debtors latest amended Plan of Reorganization, that is the subject of the August 17, 2015 hearing, was filed on August 17, 2015.  [ECF No 73]

    7.    Significantly, since the filing of the Disclosure Statement and Plan of Reorganization, [ECF No. 40], and as of the date of the hearing on the Confirmation of the Plan,

eighty-three (83) calendar days have elapsed.

### III.   EVIDENCE

At the hearing before this Court on August 18, 2015, the Debtors put forth the following evidence in support of the confirmation of their plan:

1.      Affidavit on Confirmation of Amended Plan dated August 17, 2015 by Rodolfo E. Martinez, Jr., dated August 18, 2015.

2.      Affidavit on Confirmation of Amended Plan dated August 17, 2015 by Silvia Martinez, dated August 18, 2015.

3.      Affidavit on Confirmation of Amended Plan dated August 17, 2015 by Silvia Martinez in her capacity as the President of Star Ambulance, LLC, dated August 18, 2015.

For each of the foregoing Affidavits presented by the Debtors, the affidavits merely read as recitations of 11 U.S.C. § 1129(a) without providing any further evidence to substantiate the statements sworn to by the affiants.

4.      Ballot Summary with Attached Ballots, dated August 18, 2015.

The Ballot Summary provided the acceptance votes by Hidalgo County, an impaired secured creditor; Admin Recovery, an unimpaired secured creditor; Discover Bank, an impaired unsecured creditor; Billing Partners, an impaired unsecured creditor; and Mobile Relays, an impaired secured creditor.  However, the Ballot Summary neglects to include the rejection by Knight Capital Funding II, LLC, [ECF No. 60], filed on July 21, 2015.  Furthermore, there was no evidence presented as to whether or not the ballots submitted for each class was sufficient to accept the plan pursuant to 11 U.S.C. §1126(c).

5.      Testimony by Delina Martinez, Administration for Star Ambulance Service, LLC, who testified to the following:

a.      Star Ambulance has been acquiring new contracts, which should help

improve cash flow for their operations.

b.      Star Ambulance's improved cash flow since January 2015 has permitted them to become profitable and that the level of profitability should increase going forward.

c.      Winter months are typically more profitable for Star Ambulance, as there is an increase in the use of their services.

d.      Star Ambulance currently operates six (6) ambulances, two (2) of which are owned by Star Ambulance.  The remaining four (4) ambulances are being used pursuant to a verbal lease with Star EMS, which is owned by Rodolfo Martinez, Sr. Star Ambulance has been making the payments for those units on behalf of Star EMS.

e.      Star Ambulance expects to recognize a minimum of fifty (50) percent of their accounts receivables, and the reduction is due to insurance company payments being less than payment in full.  They are working to secure payment on the receivables, as many are 90 to 120 days old and many insurance companies do not pay on 60 day terms.

f.      Star Ambulance experienced higher than average expenses during the month of July 2015, due to needed repairs on their ambulance units.   Ms. Martinez testified that there was not an expectation of the expenses to be reoccurring.

6.      Clarifications on the Plan provided by Star Ambulance's Counsel.

a.      The Combined Plan contains no evidence of feasibility or projections of future cash flow under the plan.

b.     The Liquidation Analysis is representative of the belief that the Debtors'

debts are greater than their assets, contrary to what is presented in their Schedules.

c.     The Ballot Summary is intended to provide information about the

Creditors that voted on the Plan, and Debtors are assuming that all non-voters

have accepted the Plan.

d.     Star Ambulances' members intend to retain ownership of the entity post-

bankruptcy, but this was not documented in the Disclosure or the Plan.

## IV.   CONCLUSIONS OF LAW

### A.  *Effect of 11 U.S.C. § 1129(e) Time Limit*

Debtors filed their respective Chapter 11 cases and elected the "small business"

provisions of 11 U.S.C. §101(51C).  Congress intended the updated provisions of the Bankruptcy

Code to reduce the time and expense required for small businesses to find relief while requiring

that such businesses move at an expedited pace to the confirmation of their reorganization plans.

*In re Barnes*, 308 B.R. 77, 79 (Bankr. D. Colo. 2004)[2].  In small business cases, § 1129(e)

provides that "[i]n a small business case, the court shall confirm a plan that complies with the

applicable provisions of this title and that is filed in accordance with section 1121 (e) not later

than 45 days after the plan is filed unless the time for confirmation is extended in accordance

with section 1121 (e)(3)."  11 U.S.C. § 1129(e).

---

[2] "The Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, amended several aspects of Chapter 11 to apply in
cases where a debtor is a "small business."  These amendments were created "to expedite the process by which
small businesses may reorganize under chapter 11." *Floor Statements on the Bankruptcy Reform Act of 1994,* 140
Cong. Rec. H10752, H10768 (daily ed. October 4, 1994) (analysis of Act's provisions appended to remarks of Rep.
Brooks) (1994 WL 545773).  Upon making the election, a debtor can take advantage of a more abbreviated
confirmation process, including more liberal provisions for disclosure and solicitation. *See* H.R. Rep. 103–834,
103rd Cong., 2nd Sess. 30 (October 4, 1994), U.S. Code Cong. & Admin. News 1994, p. 3323; 140 Cong. Rec.
H10768 (October 4, 1994).  To reap the benefits of this expedited process, a debtor must meet certain abbreviated
time deadlines.  Included in these deadlines is the time restriction for filing a plan contained in 11 U.S.C. § 1121(e)
..." (footnotes omitted).

§ 1121(e) provides that:

(e) In a small business case—

(1) only the debtor may file a plan until after 180 days after the date of the order for relief, unless that period is—

(A) extended as provided by this subsection, after notice and a hearing; or

(B) the court, for cause, orders otherwise;

(2) the plan and a disclosure statement (if any) shall be filed not later than 300 days after the date of the order for relief; and

(3) the time periods specified in paragraphs (1) and (2), and the time fixed in section 1129 (e) within which the plan shall be confirmed, may be extended only if—

(A) the debtor, after providing notice to parties in interest (including the United States trustee), demonstrates by a preponderance of the evidence that it is more likely than not that the court will confirm a plan within a reasonable period of time;

(B) a new deadline is imposed at the time the extension is granted; and

(C) the order extending time is signed before the existing deadline has expired.

*Id.* § 1121(e).

Thus, the plain language of the statute provides a scheme whereby small business cases should move expeditiously from filing to confirmation, a timeframe lasting no longer than 300 days for a plan to be filed and confirmation to occur within 45 days of the small business debtor's filing of the plan.  The statute places a burden upon small business debtors to act prudently, to file their plans in a relatively expedient fashion, and to ensure confirmation hearings occur on their plans within the prescribed 45-day timeframe.  Failing to do so violates the directives of §§ 1121(e)(1-2) and 1129(e), absent a timely request for an extension of time that meets the requirements provided under § 1121(e)(3).

There is limited case law addressing when the 45-day timeframe begins: on the date of the original filing or the date of the amended filing. However, several cases are instructive on how the § 1129(e) requirement interacts with plans filed by the debtor.  In *In re Florida Coastal Airlines, Inc.*, the bankruptcy court reviewed a debtor's amended plan to determine if it related back to the date of the original filing.  *See In re Florida Coastal Airlines, Inc.*, 361 B.R. 286

(Bankr. S.D. Fla. 2007).  The court held that the filing did in fact relate back.  *Id.*  The court

reached this conclusion by analogizing the filing of an amended plan to the filing of an amended

complaint in an adversary proceeding.  *Id.*  Fed. R. Bankr. P. 7015 states that an amended

complaint relates back to an original pleading in certain situations.[3]  *See In re Florida Coastal

Airlines, Inc.*, 361 B.R. 286 (Bankr. S.D. Fla. 2007).  The Court held the amended plan filed by

the debtor after the 300-day deadline had expired related back to the filing of the original plan—

and was thus timely—because it was "fundamentally a cleaned up version of its original plan."

Importantly, the question before the Court in *Florida Coastal Airlines* involved the

determination of issues under § 1121(e)(2), whereas the question before this Court focuses on the

application of § 1129(e) to determine if the proscribed 45-day deadline for confirmation should

be measured from the original plan or the amended plan(s).  Thus, *Florida Coastal Airlines*,

while instructive on matters regarding the ordering and timing of plans submitted by debtors and

other parties in interest, is not directly applicable in the matter before the court.

Our sister bankruptcy court addressed a materially similar issue to the issue before this

Court in *In re Save Our Springs (S.O.S.) Alliance, Inc.*, 388 B.R. 202 (Bankr. W.D. Tex. 2008),

*aff'd*, 2009 WL 8637183 (W.D. Tex. Sept. 29, 2009), *aff'd*, 632 F.3d 168 (5th Cir. 2011).  The

Court reviewed, among other issues, whether the 45-day deadline for the confirmation of a small

debtor's plan under § 1129(e) is measured from the original filing of the plan or the filing of any

subsequent amended plans.  The Court held that the 45-day deadline, as required by § 1129(e),

---

[3] "An amendment to a pleading relates back to the date of the original pleasing when: (A) the law that provides the applicable statute of limitations allows relation back; (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or (C) the amendment changes the party or the naming of the party against whom a claim is asserted, is Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should known that that the action would have been brought against it, but for a mistake concerning the proper party's identity."

ran from the filing of the original plan by the Debtor and, importantly, the deadline was not restarted upon the filing of an amended plan. *In re Save Our Springs (S.O.S.) Alliance, Inc.*, 388 B.R. at 224-25.  There are several other cases that have similarly treated the 45-day deadline as a bar to confirmation of the plan.  *See In re Simbaki, Ltd.*, 522 B.R. 917, 923-24 (Bankr. S.D. Tex. 2014) (holding that "it is correct that a plan must be confirmed by the court 45 days after filing"); *In re Maxx Towing, Inc.,* 2011 WL 3267937, at *4 (Bankr. E.D. Mich. July 27, 2011); *In re J & J Fritz Media, Ltd.,* 2010 WL 4882601, at *3 (Bankr. W.D. Tex. Nov. 24, 2010) (providing that "[a] small business case must be confirmed within 45 days after the filing of a plan"); *In re J.D. Manufacturing, Inc.*, 2008 WL 4533690, at *3 (Bankr. S.D. Tex. Oct. 2, 2008)[4].  *Cf. In re AMAP Sales & Collision, Inc.*, 403 B.R. 244, 250 (2009)[5].  Here, the Debtors failed to seek leave of court to extend the 45 day limit and/or seek confirmation of its Jointly Administered Plan within the prescribed time limit as set forth in 11 U.S.C. §1129(e), and as such, the Jointly Administered Plan, [ECF No. 40], filed on May 27, 2015, as amended, cannot be confirmed by this Court.

Even if the Court were to disregard the 45 day confirmation limitation, the Plan as filed is patently not confirmable for the following reasons:

**B.    Debtors' Jointly Administered Combined Amended Disclosure Statement & Plan of Reorganization [Case 15-70041- ECF No. 63]**

As the proponent of the Plan, the Debtor must establish by a preponderance of the

---

[4] The Court stated that "Bankruptcy Code § 1121(e)(3) provides that the 45 days can be extended only if the court issues an order prior to the running of that deadline.  A prerequisite to the issuance of an order granting extension is a request by the debtor that is noticed to parties in interest. The debtor must also prove at a hearing '... that it is more likely than not that the court will confirm a plan within a reasonable period of time.'    Debtor did not request an extension of the 45 day limit and the Court did not issue an order extending the … deadline."

[5] The Court stated that "[d]ebtor has complied with the timing mechanics and procedural requirements created by the Bankruptcy Code and Rules.  *Debtor timely filed its Plan and Disclosure Statement* within the 300–day period prescribed by Section 1121(e)(2) of the Bankruptcy Code. *Debtor timely filed its Motion* seeking an extension of the time to confirm the Plan within the 45 day period set forth in Section 1129(e) of the Bankruptcy Code." (emphasis added).

evidence that each of the confirmation requirements set forth in Bankruptcy Code § 1129 has been met. *See Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters.),* 994 F.2d 1160, 1165 (5th Cir. 1993). The Court considers each of these requirements in turn.

      1.       *Bankruptcy Rule 3016(a).*

The Plan is dated and identifies the Debtors as the Plan proponents, thereby satisfying Bankruptcy Rule 3016(a).

      2.       *Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).*

Bankruptcy Code § 1129(a)(1) requires that "[t]he plan compl[y] with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1). Courts interpret this language to mean that a plan must meet the requirements of Bankruptcy Code Sections 1122 and 1123. *See, e.g., In re Save Our Springs*, 632 F.3d at 174; *In re Enviro Solutions of New York, LLC*, 2010 WL 3373937, at *2-3 (Bankr. S.D.N.Y. July 22, 2010).   For the reasons stated on the record and in this Opinion, the Plan fails to comply with the applicable provisions of the Bankruptcy Code, thereby failing to satisfy § 1129(a)(1) of the Bankruptcy Code.

      (a).     *Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).*

Section 1122 addresses the classification of claims or interests. In particular, Bankruptcy Code § 1122(a) provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other class or interest of such class." 11 U.S.C. § 1122(a). Section 1122(a) is satisfied when the debtor does not "classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan." *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1279 (5th Cir. 1991), *cert. denied*, *Greystone III Joint Venture v. Phoenix Mut. Life Ins. Co.*, 506 U.S. 821 (1992). Although the Debtor has not established by a preponderance of the evidence

that the Plan satisfies § 1122(a) by separately classifying similar classes of claims, this Court does not view the classification flaw as fatal to Confirmation.

Section 1123(a)(1) addresses the contents of a plan and requires that a plan designate classes of claims and interests. 11 U.S.C. § 1123(a)(1). Here, section 5 of the Plan improperly classifies the claims and interests.  Administrative claims and priority tax claims do not require designation under § 1123(a)(1). *In re Eagle Bus Bfg., Inc.*, 134 B.R. 584, 596 (1991). Thus, the Debtor not has established by a preponderance of the evidence that the Plan satisfies the requirements of § 1123(a)(1).

(b).  *Specified Treatment of Impaired and Unimpaired Classes (11 U.S.C. § 1123(a)(2-3)).*

Sections 1123(a)(2) and (a)(3) require that a plan specify which classes are unimpaired and which classes are impaired under the plan. 11 U.S.C. § 1123(a)(2-3). Here, section 5 of the Plan clearly provides that several of the creditors listed in Class 2-M are unimpaired and Classes 1-S, 2-S, 3-S, 1-M, & 3-M and some of the creditors listed in Class 2-M are impaired under the Plan. Additionally, the Plan specifies the treatment of each claim including interest rates and other terms.  Therefore, the Debtor has established by a preponderance of the evidence that Sections 1123(a)(2) and (3) are satisfied.

(c).  *No Discrimination (11 U.S.C. 1123(a)(4)).*

Section 1123(a)(4) requires that a plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). As set forth in section 5 of the Plan, some of the claims in similar classes receive disparate treatment in terms of

interest rate, terms of payout, or both.  Thus, in accordance with § 1123(a)(4), the Plan does not

provide the same treatment for each claim or interest of a particular class. As a result, the Debtor

has not established by a preponderance of the evidence that the requirements of § 1123(a)(4) are

met.

      (d).    *Implementation of the Plan (11 U.S.C. 1123(a)(5)).*

Section 1123(a)(5) requires that a plan provide adequate means of implementation of the

plan.  *In re Eagle Bus Mfg., Inc.*, 134 B.R. at 596.  Here, Articles 3 & 4 of the Plan fails to set

forth any substantive provisions to facilitate the implementation of the Plan.  The Plan states that

Debtors will reorganize their finances by "generating additional revenues" and "reducing

expenditures," but provides no details as to how these goals will be accomplished.   At the

hearing on August 18, 2015, the Debtors offered minimal testimony to shed additional light on

how they will improve the profitability, but to discuss how profitability has historically improved

during the winter months and that their cash flow position is getting stronger is by no means

adequate.  Accordingly, the Debtor has failed to establish by a preponderance of the evidence

that the Plan satisfies § 1123(a)(5).

      (e).    *Non–Voting Equity Securities (11 U.S.C. 1123(a)(6)).*

Section 1123(a)(6) "requires a plan to provide for the inclusion in the charter of the

debtor, if the debtor is a corporation ... a provision prohibiting the issuance of non-voting equity

securities." *In re PC Liquidation Corp.*, 2006 Bankr. LEXIS 4638, *16 (Bankr. E.D. N.Y. Nov.

13, 2006); *see also In re Eagle Bus Mfg., Inc.*, 134 B.R. at 596. Consistent with § 1123(a)(6), the

Plan is silent and does not address this issue.  As a result, the Debtor has not established by a

preponderance of the evidence that the requirements of § 1123(a)(6) are met or not applicable.

      (f).    *Designation of Managers, Directors and Officers of the Debtors (11 U.S.C.*

*1123(a)(7)).*

Section 1123(a)(7) requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan...." 11 U.S.C. § 1123(a)(7). The Plan is silent as to whom the operation, management, and control of the reorganized Debtor will be assigned to.  The Debtors offered little testimony at the hearing on August 18, 2015 to enlighten this Court as to their expectations for management of the reorganized entity, beyond stating that the Silvia Martinez and Rodolfo Martinez III intend to retain ownership of the company.  Accordingly, the Debtors have not established by a preponderance of the evidence that the Plan satisfies the requirements of § 1123(a)(7).

(g).   *Impairment/Unimpairment of Any Class of Claims or Interests (11 U.S.C. 1123(b)(1)).*

The classes of claims contained in the Plan adequately describe which classes are impaired or unimpaired, thus satisfying the requirements of § 1123(b)(1).

(h).   *Assumption and Rejection of Executory Contracts (11 U.S.C. 1123(b)(2)).*

Article 9 of the Plan provides for the rejection of the executory contracts and unexpired leases of the Debtors as of the Effective Date in accordance with 11 U.S.C. §1123(b)(2). However, the Court was troubled by the fact that such assumption or rejection of contracts by the Debtors was not specific enough to meet the requirements of § 1123(b)(2). The Debtors offered little testimony as to the actual ownership and disposition of the ambulances.  Moreover, the lack of clarity left the Court wondering whether the actual underlying leases would be assumed by the Debtors.

(i).   *Settlement of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)).* The Plan

does not mention nor does it provide for the settlement of claims or causes of action, thereby violating § 1123(b)(3).

(j).   *Modification of Rights (11 U.S.C. § 1123(b)(5)).*

The Plan (1) leaves unaffected the rights of some holders of Claims in Classes 2-M, and (2) affects the rights of holders of Claims in all other Classes.  Nevertheless, the Debtors have demonstrated by a preponderance of the evidence that the Plan complies with § 1123(b)(5).

(k).   *Cure of Defaults (11 U.S.C. § 1123(d)).*

The Plan does not provide for the curing of any defaults. Accordingly, the Plan complies with § 1123(d) of the Bankruptcy Code.

3.   *The Proponent of the Plan Complies with the Applicable Provisions of this Title (11 U.S.C. § 1129(a)(2)*

Bankruptcy Code § 1129(a)(2) requires that "[t]he proponent of the plan comply with the applicable provisions of this title." 11 U.S.C. § 1129(a)(2). Courts interpret this language to require that the plan proponent comply with the disclosure and solicitation requirements set forth in Bankruptcy Code §§ 1125 and 1126. *See, e.g., In re Eagle Bus Mfg., Inc.*, 134 B.R. at 598-99. The Debtors, as proponents of the Plan, have substantially complied with the Bankruptcy Code and Rules provisions regarding disclosure, notice, and solicitation with respect to the Plan, the Disclosure Statement, and other matters in connection with this Chapter 11 case. As noted above, the Court entered an Order approving the Disclosure Statement on June 17, 2015. Thus, the Debtors have established by a preponderance of the evidence that the requirements of § 1129(a)(2) are met.

4.   *The Plan has been Proposed in Good Faith and not by any means Forbidden by Law (11 U.S.C. § 1129(a)(3)*

Bankruptcy Code § 1129(a)(3) requires that "[t]he plan has been proposed in good faith

and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The 5th Circuit has interpreted good faith to be determined "in light of the totality of the circumstances surrounding establishment of [the] plan." *In re Village at Camp Bowie I, L.P.*, 710 F.3d 239, 247 (5th Cir. 2013). A plan is proposed in good faith only "[w]here [a] plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success." *Id.*; *see also In re Eagle Bus Mfg., Inc.*, 134 B.R. at 599. In addressing the good faith requirement, the Second Circuit noted, "[t]he good faith test means that the plan was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir.1988).  As several courts have observed, the good faith requirement should be viewed in light of the totality of the circumstances surrounding the plan, and "the requirement of Section 1129(a)(3) 'speaks more to the process of plan development than to the content of the plan.'" *In re Chemtura Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010).  Section 1129(a)(3) makes clear that "a plan proponent [has] a duty to propose its plan 'in good faith and not by any means forbidden by law.'" *In re Village at Camp Bowie*, 710 F.3d at 247. Similarly, the good faith requirement addresses the "conduct manifested in obtaining the confirmation votes of a plan of reorganization and not necessarily on the substantive nature of the plan." *In re Sovereign Grp.*, 88 B.R. 325, 328 (D. Colorado 1988). It does not require the bankruptcy judge to determine whether the ends achieved in the plan contravene non-bankruptcy law. *See In re Ocean Shores Cmty. Club, Inc.*, 1991 WL 184827, at *2 (9th Cir. Sept. 19, 1991) (observing that "Bankruptcy Code section 1129(a)(3) bars confirmation of plans proposed in violation of law, not those that contain terms that may contravene law."). Other sections of the Bankruptcy Code permit a court to review the legality of plan provisions. *See In re Food City*, 110 B.R. 808, 812 n. 10 (Bankr. W.D. Tex. 1990) (noting that "[t]his is not to say that a

potentially illegal provision is not a relevant consideration in the confirmation process. For example, the legal consequences which might flow from the implementation of a substantive provision which is prohibited by law could affect the plan's feasibility under § 1129(a)(11).").

Here, the record shows that the Debtors proposed the Plan with "a basis for expecting that a reorganization can be effected." *Kane v. Johns-Manville*, 843 F.2d at 649. The Debtors have testified that their cash flow projections should be improved and are anticipating that they will recognize approximately $17,000 net each month, which will allow them to make the scheduled payments under the Plan. Moreover, a survey of the monthly operating reports filed by the Debtor substantiates the testimony provided in showing a continually improving financial position for the entity during the course of the bankruptcy, excepting the higher expenses in July 2015. Furthermore, the Debtors have recently made necessary repairs to their ambulance units that will allow them to further enjoy a period of relief from repair expenses on those units. Although the Debtors have failed to provide any substantial evidence to this Court that in fact this Plan is feasible, this Court believes that the Debtors have proposed this Plan in good faith. There is nothing in the record to demonstrate otherwise. However, as the Court pointed out to counsel, certain provisions of the Plan do violate 11 U.S.C. §1129(8)(C). For these reasons, and based on the entire record, the Debtors have established by a preponderance of the evidence that although the Debtors have proposed the Plan in good faith, certain provisions of the Plan fail to meet the provisions of  § 1129(a)(3).

5.       *Any Payment made or to be made by the Proponent has been Approved by, or is Subject to the Approval of, the Court as Reasonable. (11 U.S.C. § 1129(a)(4)*

Bankruptcy Code § 1129(a)(4) provides:

> "Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and

incident to the case, has been approved by, or is subject to the approval of, the court as reasonable."

11 U.S.C. § 1129(a)(4).  Here, the Plan is silent as to the payment of administrative expenses.  Accordingly, the Debtors have not established by a preponderance of the evidence that the Plan satisfies the requirements of § 1129(a)(4).

6.   *The Proponent of the Plan has Disclosed the Identity and Affiliations of Individuals (11 U.S.C. § 1129(a)(5)*

Under Bankruptcy Code § 1129(a)(5), a debtor must:

> "[D]isclose the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor or a successor to the debtor under the plan, and to show that the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity security holders and with public policy."

Section 1129(a)(5) also requires the disclosure of the identity of any insider that will be employed by the reorganized debtor, and the nature of any compensation for such insider. *In re Eagle Bus Mfg., Inc.*, 134 B.R. at 599-600.  Here, the Plan is silent as to this provision.  As a result, the Debtors have not established by a preponderance of the evidence that the Plan complies with § 1129(a)(5).

7.   *Regulatory Approval of Rate Changes (11 U.S.C. § 1129(a)(6)*

Bankruptcy Code § 1129(a)(6) requires that "[a]ny governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval." 11 U.S.C. § 1129(a)(6).  Upon confirmation of the Plan, the Debtor's business will not involve rates subject to the approval of any governmental regulatory commission. Accordingly, § 1129(a)(6) does not apply to this case.

8.   *Impaired Classes (11 U.S.C. § 1129(a)(7))*

Bankruptcy Code § 1129(a)(7) requires each holder of a claim or interest of such class

    (1) has accepted the plan; or

    (2) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date. . . .

Bankruptcy Code § 1129(a)(7) is commonly referred to as the "best interests test," because it ensures that reorganization is in the best interest of individual claimholders who have not voted in favor of the plan. *In re Cypresswood Land Partners, I*, 409 B.R. 396, 428 (Bankr. S.D. Tex. 2009). It requires that all holders of claims and interests in impaired classes must either vote to accept the plan or receive at least as much as they would receive in a Chapter 7 liquidation. The Liquidation Analysis provided by the Debtors wholly fails to support a finding that this is the case. At the hearing on August 18, 2015, the Debtors offered testimony to discuss the Liquidation Analysis and only provided the explanation that the analysis was based on a presumption that the Debtors' debts outweighed their assets, contrary to the sum of the Schedules filed with this Court. As a result, the Debtors have not established by a preponderance of the evidence that the Plan complies with § 1129(a)(7).

Even assuming the Debtors had satisfied the best interests test—which they have not—the Court must review the remaining requirements of § 1129(a) before discussing the cramdown requirements of § 1129(b).

    9.    *Plan Acceptance by All Classes (11 U.S.C. § 1129(a)(8))*

Bankruptcy Code § 1129(a)(8) provides that "[w]ith respect to each class of claims or interests (A) such class has accepted the plan; or (B) such class is not impaired under the plan." 11 U.S.C. § 1129(a)(8). The Certification of Ballots failed to demonstrate how the Plan complied with § 1129(a)(8).

10.     *Disparate Claim Treatment (11 U.S.C. § 1129(a)(9))*

Bankruptcy Code § 1129(a)(9) provides for the mandatory treatment of certain priority claims. As to administrative claims, the statute states:

> "Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that ... with respect to a claim of a kind specified in section 507(a)(2) [administrative expense claims] ... on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim."

11 U.S.C. § 1129(a)(9)(A).  Here, section 6 of the Plan fails to provide that the administrative claims will be paid in full on: the Effective Date, upon court approval, or upon such other terms agreed upon by the parties**.**  Accordingly, the Debtor has not established by a preponderance of the evidence that the Plan meets the requirements of Bankruptcy Code § 1129(a)(9)(A).

Section 1129(a)(9)(B) addresses the treatment of other priority non-tax claims. The statute provides that

> "each holder of a priority non-tax claim will receive:  (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the amount allowed of such claim[.]"

11 U.S.C. § 1129(a)(9)(B). The Plan does not contain any such claims.  Thus, the Debtor has established by a preponderance of the evidence that the Plan satisfies the requirements of § 1129(a)(9)(B).

Finally, the Bankruptcy Code provides for similar treatment for unsecured and secured priority tax claims. For unsecured priority tax claims, the Bankruptcy Code requires:

> "[T]he holder of such claim will receive ... regular installment payments in cash--(i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (ii) over a period ending not later than 5 years after the date of the order for relief ... and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan...."

11 U.S.C. § 1129(a)(9)(C).

Here, section 12 of the Plan states that holders of allowed priority tax claims shall be paid in 60 monthly installments which shall begin thirty (30) days from the confirmation date, but the Plan is silent as to whether the payments are in accordance with this statute and accordingly, the Debtor has not established by a preponderance of the evidence that the Plan meets the requirements set forth in § 1129(a)(9)(C).

As to secured priority tax claims, Bankruptcy Code § 1129(a)(9)(D) states that claimholders will receive cash payments "in the same manner and over the same period" as required for unsecured priority tax claims. 11 U.S.C. § 1129(a)(9)(D).   Here, section 12 of the Plan states that holders of allowed secured and priority tax claims of the I.R.S. shall receive 120 monthly installments commencing thirty (30) days from the date of confirmation.   Additionally, section 5 of the Plan indicates that the Secured Claim of the Texas Workforce Commission shall receive 55 monthly installments, but is silent as to when such payments are to commence and end.   Since the Plan fails to provide that the priority tax claim holders will have their claims satisfied in full on the effective date, or "in the same manner and over the same period" as required for unsecured priority tax claims, the Debtor has not established by a preponderance of the evidence that the Plan meets the requirements set forth in §§ 1129(a)(9)(C) and (D).

11.      *Acceptance by Impaired Class(es) (11 U.S.C. § 1129(a)(10))*

Bankruptcy Code § 1129(a)(10) requires that "at least one class of claims that is impaired under the plan has accepted the plan ... without including any acceptance of the plan by any insider." 11 U.S.C. § 1129(a)(10). According to the Certification of Ballots and despite one rejection, each class carried. Accordingly, the Debtor has established by a preponderance of the evidence that the Plan satisfies the requirements of § 1129(a)(10).

12.      *Plan Feasibility Requirement (11 U.S.C. § 1129(a)(11))*

Bankruptcy Code § 1129(a)(11) is commonly referred to as the "feasibility" requirement. The Bankruptcy Code requires that confirmation may proceed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor ... unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). The Second Circuit has interpreted the feasibility standard to mean "whether the plan offers a reasonable assurance of success. Success need not be guaranteed." *Kane v. Johns-Manville*, 843 F.2d at 649; *see also Matter of T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 801-2 (5th Cir. 1997); *In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 421-22 (Bankr. S.D.N.Y. 2003) (finding that "[i]n making determinations as to feasibility, ... a bankruptcy court does not need to know to a certainty, or even a substantial probability, that the plan will succeed. All it needs to know is that the plan has a reasonable likelihood of success."). Bankruptcy courts consider factors including "the earning power of the business, its capital structure, the economic conditions of the business, the continuation of present management, and the efficiency of management in control of the business after confirmation" when assessing whether a plan is feasible. *In re D & G Invs. of West Fla., Inc.*, 342 B.R. 882, 886 (Bankr. M.D. Fla. 2006).

In determining if a plan is feasible, the "inquiry is peculiarly fact intensive and requires a case by case analysis, using as a backdrop the relatively low parameters articulated in the statute." *In re Eddington Thread Mfg. Co.*, 181 B.R. 826, 833 (Bankr. E.D. Pa. 1995). "A 'relatively low threshold of proof' will satisfy the feasibility requirement." *Mercury Capital Corp. v. Milford Conn. Assoc., L.P.*, 354 B.R. 1, 9 (D. Conn. 2006) (*quoting Computer Task Grp., Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 191 (9th Cir. 2003)). And as the Second Circuit recently observed, "[i]n most situations, the time immediately following bankruptcy will call for fairly specific proof of the company's ability to meet its obligations.... As one moves further

away from the time of confirmation, ... the proof will necessarily become less and less specific." *Dish Network Corp. v. DBSD N. Am. Inc. (In re DBSD N. Am. Inc.)*, 2011 WL 350480, at *22 (2d Cir. Feb. 7, 2011).

In the context of § 1129(a)(11) and feasibility, the question to be addressed is not whether the Plan offers adequate treatment of the secured claim. Rather, it is whether the Plan, as proposed, has a reasonable prospect of success. Viewed another way, § 1129(a)(11) requires a debtor to show that it can accomplish what it proposes to do, in the time period allowed, on the terms set forth in the plan. And a finding that a plan is feasible does not mean that it satisfies the other requirements of confirmation, including the requirement to treat the claims of dissenting creditors fairly and equitably. Nor does it mean the risk that the reorganization may fail should not be taken into account in other ways, including in determining a cramdown interest rate.

The proposed plan wholly fails to demonstrate financial feasibility. The Debtors (1) did not provide any financial projections demonstrating its ability to fund the plan for the proposed period of time; (2) failed to disclose the adequacy of the Debtors' capital structure; (3) failed to show the earning power of the Debtors' business; (4) failed to show the ability of the Debtors' management and the probability of the continuation of the same management and (5) any other related matter determinative of the prospects of a sufficiently successful operation to enable performance of the provisions of the plan. *In re M & S Assocs. Ltd*, 138 B.R. 845, 849 (Bankr. W.D. Tex. 1992). For these reasons, and based on the entire record, the Debtors have not established by a preponderance of the evidence that the Plan is feasible and that the requirements of § 1129(a)(11) are satisfied.

13.     *Payment of Plan Fees (11 U.S.C. § 1129(a)(12))*

Bankruptcy Code § 1129(a)(12) requires that "[a]ll fees payable under section 1930 of

title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." 11 U.S.C. § 1129(a)(12). Here, the Plan states that "all fees payable under 28 U.S.C. § 1930 that have not been paid, shall be paid on or before the Effective Date." [Case 15-70041, ECF No. 71, p. 13 ¶ 15]. Accordingly, the Debtor has established by a preponderance of the evidence that the Plan meets the requirements of § 1129(a)(12).

14.      *Payment of Retiree Benefits (11 U.S.C. § 1129(a)(13))*

Bankruptcy Code § 1129(a)(13) requires that a plan provide for "the continuation of payment of all retiree benefits, at the level established pursuant to § 1114 of the Bankruptcy Code at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits." *PC Liquidation, 2006 Bankr. LEXIS* 4638, at *27. Therefore, to comply with § 1129(a)(13), a plan must allow for the continued payment of retirement benefits either at "the level originally provided by the debtor ... or at the modified level established pursuant to the requirements of section 1114 of the Bankruptcy Code by court order, or by agreement between the debtor in possession or trustee and the authorized representative of the persons entitled to receive retiree benefits." 7 Collier on Bankruptcy ¶1129.02[13], p. 1129-56 (16th ed. 2010).  Here, the Plan is silent as to whether the Debtor has retirement benefit agreements with past or current employees or even if at all. As a result, Debtors have not complied with § 1129(a)(13).

15.      *Payment of Domestic Support Obligation (11 U.S.C. § 1129(a)(14))*

Bankruptcy Code § 1129(a)(14) states "[i]f the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the

filing of the petition."   Here, the individual Debtors have not certified in their Certification In Support of Confirmation of Reorganization of the Plan that they are or are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation, or whether they have paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.   Accordingly, the Debtors have not established by a preponderance of the evidence that the Plan meets the requirements of § 1129(a)(14).

16.   *Objection by Holders of Unsecured Claims of Individual Debtors (11 U.S.C. § 1129(a)(15))*

In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—

> (A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325 (b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

11 U.S.C. § 1129(15)(A-B).   Here, there have been no objections to confirmation of the Jointly Administered Plan.   Nevertheless, the Court has an independent duty to ensure that the Debtors have complied with § 1129(a)(15).   As stated earlier, the Debtors failed to document in their Jointly Administered Plan a proper liquidation analysis of their assets. Accordingly, the Debtors have not established by a preponderance of the evidence that the Plan meets the requirements of § 1129(a)(15).

17.   *Transfers of Property (11 U.S.C. § 1129(a)(16))*

Bankruptcy Code § 1129(a)(16) requires that "[a]ll transfers of property under the plan

shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust." Debtor is not a corporation or trust that is not a moneyed, business or commercial corporation or trust. Therefore, § 1129(a)(16) is not applicable.

18. *Cramdown Provisions (11 U.S.C. § 1129(b))*

Section 1129(b) permits a plan proponent to "cramdown" a plan over a dissenting class if the plan does not "discriminate unfairly" and provides "fair and equitable" treatment to the dissenting classes that are impaired under the plan. *In re Eagle Bus Mfg., Inc.*, 134 B.R. at 601. Before a plan proponent may cramdown a plan, it must establish that, other than paragraph (8), all of the other requirements of § 1129(a) are met. *Id.* As discussed in the foregoing sections of this opinion, the Debtors have substantially failed to comply with § 1129(a). Therefore, Bankruptcy Code § 1129(b) is unavailable, since those provisions have not been met by the Debtors.

19. *Avoidance of Tax Liability (11 U.S.C. § 1129(d))*

Finally, Bankruptcy Code § 1129(d) requires that "[t]he primary purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act of 1933, and there has been no objection filed by any governmental unit asserting such avoidance." *In re Eagle Bus Mfg., Inc.*, 134 B.R. at 602; *see also PC Liquidation*, 2006 Bankr. LEXIS 4638, at *28. There has been no request under this Section or objection to the Plan by any governmental unit on these grounds. Accordingly, § 1129(d) does not apply to this case.

Therefore, for the reasons stated on the record, the Court holds that the 45-day timeline under § 1129(e) began upon Star Ambulance's filing of their original plan on May 27, 2015, but did not start again upon the Debtors filing of an amended plan. Furthermore, even if the Plan had

been filed and a timely motion for confirmation had been made, the Debtors have not met their burden of proving the elements of § 1129 of the Bankruptcy Code by a preponderance of the evidence.  The plain language of § 1121(e) provides an exclusivity period for the Debtor to file a plan, but does not mandate that dismissal or conversion be required should the Debtor fail to do so within the 180-day timeframe.  The requirements of § 1129(e) places a burden upon the court, but does not place one on the Debtor.  *See In re Crossroads Ford, Inc.*, 453 B.R. 764, 768 (Bankr. D. Neb. 2011).  Moreover, the disparity in burdens between § 1129(e) and § 1121(e) is instructive in resolving a situation, such as the one that Star Ambulance finds itself in, and this Court should not impose, nor does it, a dismiss or convert choice under § 1112(b)(4)(J) as a result of a non-confirmable plan, as this Court has not issued an order mandating plan confirmation nor has the time allotted in § 1121(e)(2).  The Order entered contemporaneously with this Opinion only requires the Debtors to adhere to the timeframes of §§ 1121 and 1129, a burden that was already imposed on the Debtors by the United States Bankruptcy Code.

AS THE COURT FINDS THAT THE NECESSARY ELEMENTS UNDER 11 U.S.C. §§1121 & 1129(a) HAVE NOT BEEN MET, THE DEBTORS' JOINTLY ADMINISTERED PLAN AS PROPOSED, AND AMENDED, PURSUANT TO THE STAR AMBULANCE AND MARTINEZ COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT, SHALL BE AND HEREBY IS NOT CONFIRMED.

## CONCLUSION

The Debtors prosecuted their Chapter 11 Bankruptcy with relative diligence since their initial filing in January 2015 and have continued to do so since moving for joint administration. The original plan and disclosure statement was filed on May 27, 2015 and the plan has been

amended multiple times since.   The Debtors, however, have not filed any motions seeking to extend the time to confirm their original or amended plans.   As such, the 45-day drop dead date for confirmation of the Plan before this Court, as required by § 1129(e) has come and gone, and therefore the Plan before this Court is no longer eligible for confirmation.   *See In re Save Our Springs (S.O.S.) Alliance, Inc.*, 632 F.3d at 174 ("stating that "[t]he bankruptcy court can approve a reorganization plan *only if* it conforms to the requirements of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1)") (emphasis added).   Perhaps more importantly, the Plan, as filed and amended, does not met the requirements of 11 U.S.C. §1129(a) or (b) and is not confirmable.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 08/24/2015.

Eduardo V. Rodriguez
United States Bankruptcy Judge